UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
———————————————————————

| | |
|---|---|
| SUPER 8 WORLDWIDE, INC., formerly known as SUPER 8 MOTELS, INC., a South Dakota Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>JANKI HOSPITALITY, INC., an Illinois Corporation; JASMIN N. PATEL, an individual; and ANILA NAVANIT PATEL, an individual,<br><br>        Defendants. | **COMPLAINT**<br><br>Civil No.: 15-cv-3696 |

———————————————————————

Plaintiff, Super 8 Worldwide, Inc., formerly known as Super 8 Motels, Inc., by and through its attorneys, Goldberg Segalla LLP, as and for its Complaint against Defendants, Janki Hospitality, Inc., Jasmin N. Patel, and Anila Navanit Patel, alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Super 8 Worldwide, Inc., formerly known as Super 8 Motels, Inc. ("SWI") is a corporation organized and existing under the laws of the State of South Dakota, with its principal place of business in Parsippany, New Jersey.

2. Defendant Janki Hospitality, Inc. ("Janki"), is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Waukegan, Illinois.

3. Defendant Jasmin N. Patel is a guarantor Janki and a citizen of the State of Illinois.

4. Defendant Anila Navanit Patel is a guarantor Janki and a citizen of the State of Illinois.

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 inasmuch as the plaintiff and all the defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

6.     This Court has personal jurisdiction over Janki by virtue of, among other things, paragraph 2 of the October 17, 2007 Addendum to the Franchise Agreement pursuant to the Illinois Franchise Disclosure Act (the "IL Addendum") which amends section 17.6.3 of the November 15, 2007 franchise agreement by and between Janki and SWI (the "Franchise Agreement"), described in more detail below, so that Janki has consented that "...all litigation by or between [Janki] and [SWI], arising directly or indirectly from the franchise relationship shall be commenced and maintained, at [SWI's] election, in the state courts of Illinois or the United States District Court for Illinois…" A true and correct copy of the IL Addendum is attached hereto as Exhibit A.

7.     This Court has personal jurisdiction over Jasmin N. Patel and Anila Navanit Patel (collectively, "the Patel Defendants") by virtue of, among other things, the terms of a guaranty (the "Guaranty"), described in more detail below, pursuant to which the Patel Defendants acknowledged that each were personally bound by section 17 of the Franchise Agreement, as amended by the IL Addendum.

8.     Venue is proper in this District pursuant to section 17.6.3 of the Franchise Agreement, as amended by the IL Addendum, inasmuch as that provision contains an express waiver by Janki of any objection to venue in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

<u>The Agreements Between The Parties</u>

9.      On or about November 15, 2007, SWI entered into the Franchise Agreement with Janki for the operation of a 61-room guest lodging facility located at 630 N. Green Bay Road, Waukegan, Illinois 60085, Super 8® Site No. 03555-72361-04 (the "Facility").   A true and correct copy of the Franchise Agreement is attached hereto as Exhibit B.

10.      Pursuant to section 5 of the Franchise Agreement, Janki was obligated to operate a Super 8® guest lodging facility until November 30, 2027.

11.      Pursuant to section 3 of the Franchise Agreement, Janki was required, among other things, to make renovations to the Facility, in order to bring the Facility into compliance with "System Standards," "Approved Plans," and/or a "Punch List," all of which were defined in or attached to the Franchise Agreement, and to achieve and maintain certain scores on periodic quality assurance inspections conducted by SWI.

12.      Pursuant to section 3.4 of the Franchise Agreement, Janki was required to operate the Facility in compliance with SWI's "System Standards," as defined in the Franchise Agreement, including SWI's quality assurance requirements.

13.      Pursuant to section 3.9 and section 4.8 of the Franchise Agreement, SWI had the right to conduct unlimited quality assurance inspections of the Facility (and unlimited re-inspections if the Facility received a failing score in the inspection) to determine whether the Facility was in compliance with SWI's quality assurance requirements.

14.      Pursuant to section 7 and Schedule C of the Franchise Agreement, Janki was required to make certain periodic payments to SWI for royalties, system assessments, taxes, interest, and other fees (collectively, "Recurring Fees").

15.     Pursuant to section 7.3 of the Franchise Agreement, Janki agreed that interest is payable "on any past due amount payable to [SWI] under this [Franchise] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."

16.     Pursuant to section 3.8 of the Franchise Agreement, Janki was required to prepare and submit monthly reports to SWI disclosing, among other things, the amount of gross room revenue earned by Janki at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to SWI.

17.     Pursuant to section 3.8 of the Franchise Agreement, Janki agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.8 and 4.8 of the Franchise Agreement, Janki agreed to allow SWI to examine, audit, and make copies of the entries in these books, records, and accounts.

18.     Pursuant to section 11.2 of the Franchise Agreement, SWI could terminate the Franchise Agreement, with notice to Janki, for various reasons, including Janki's: (a) failure to remedy any default of its obligations or warranties under the Franchise Agreement or System Standards Manual within 30 days after receipt of written notice from SWI specifying one or more defaults under the Franchise Agreement and/or (b) receipt of two or more notices of default under the Franchise Agreement in any one year period, whether or not the defaults were cured.

19.     Pursuant to section 12.1 of the Franchise Agreement, Janki agreed that, in the event of a termination of the Franchise Agreement pursuant to section 11.2, it would pay liquidated damages to SWI in accordance with a formula specified in the Franchise Agreement.

20.     Pursuant to section 17.4 of the Franchise Agreement, Janki agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement."

21.     Effective as of the date of the Franchise Agreement, the Patel Defendants provided SWI with a Guaranty of Janki's obligations under the Franchise Agreement, a true copy of which is attached hereto as Exhibit C.

22.     Pursuant to the terms of the Guaranty, the Patel Defendants agreed, among other things, that upon a default under the Franchise Agreement, they would "immediately make each payment and perform or cause [Janki] to perform, each unpaid or unperformed obligation of [Janki] under the [Franchise] Agreement."

23.     Pursuant to the terms of the Guaranty, the Patel Defendants agreed to be bound by section 17.4 of the Franchise Agreement which provides that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement.

<u>The Defendants' Defaults and Termination</u>

24.     Beginning in 2009, Janki failed to operate the Facility in accordance with SWI's Systems Standards in breach of the Franchise Agreement.

25.     On January 13, 2009, SWI conducted a quality assurance ("QA") inspection of the Facility.  By letter dated February 10, 2009, a true copy of which is attached hereto as Exhibit D, SWI advised Janki that: (a) Janki failed to complete items outlined in the Facility's "punchlist," and as a result, Janki was in default of its obligations under the Franchise

Agreement; (b) it had 90 days within which to cure the QA default; and (c) if the default was not cured, the Franchise Agreement may be subject to termination.

26.     On February 9, 2013, SWI conducted a QA inspection of the Facility.  By letter dated March 15, 2013, a true copy of which is attached hereto as Exhibit E, SWI advised Janki that: (a) the Facility received a failing score in the QA inspection and, as a result, Janki was in default of its obligations under the Franchise Agreement; (b) it had 90 days within which to cure the QA default; and (c) if the default was not cured and Janki did not enter into an acceptable improvement plan with SWI's Quality Assurance Department, then reservation service to the Facility might be suspended and the Franchise Agreement might be subject to termination.

27.     On June 19, 2013, SWI conducted a QA inspection of the Facility.  By letter dated August 19, 2013, a true copy of which is attached hereto as Exhibit F, SWI advised Janki that: (a) the Facility received another failing score in the QA inspection and, as a result, Janki was in default of its obligations under the Franchise Agreement; (b) it had 45 days within which to cure the QA default; and (c) if the default was not cured, the reservation service to the Facility might be suspended and the Franchise Agreement might be subject to termination.

28.     On October 7, 2013, SWI conducted a QA inspection of the Facility.  By letter dated November 20, 2013, a true copy of which is attached hereto as Exhibit G, SWI advised Janki that: (a) the Facility received a failing score in the QA inspection and, as a result, Janki was in default of its obligations under the Franchise Agreement; (b) it had 30 days within which to cure the QA default; (c) pursuant to the Franchise Agreement, Janki's Additional Termination Right was automatically terminated; and (d) if the default was not cured, the Franchise Agreement might be subject to termination.

29.     By letter dated December 31, 2013, a true copy of which is attached as Exhibit H, SWI terminated the Franchise Agreement, effective December 31, 2013, and advised Janki that it was required to pay to SWI as liquidated damages for premature termination the sum of $153,718.06 as required under the Franchise Agreement, together with all outstanding Recurring Fees through the date of termination.

## FIRST COUNT
### (Accounting)

30.     SWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 29 of the Complaint.

31.     Pursuant to sections 3.8 and 4.8 of the Franchise Agreement, Janki agreed to allow SWI to examine, audit, and make copies of Janki's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

32.     The calculation of the monetary amounts sought by SWI in this action is based on the gross room revenue information supplied to SWI by Janki and, to the extent there has been non-reporting, SWI's estimate as to the gross room revenue earned by Janki.

33.     The accuracy of this estimate cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Janki.

## SECOND COUNT
### (Liquidated Damages)

34.     SWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 33 of the Complaint.

35.     By letter dated December 31, 2013, SWI terminated the Franchise Agreement, effective December 31, 2013, due to Janki's repeated failure to satisfy the required QA standards under the Franchise Agreement.

36.     Section 12.1 of the Franchise Agreement provides that, in the event of termination of the Franchise Agreement due to action of Janki, Janki shall pay liquidated damages to SWI within 30 days of termination.

37.     Section 12.1 of the Franchise Agreement specifies that liquidated damages are calculated as "an amount equal to the sum of accrued Royalties and System assessment Fees during the immediately preceding 36 full calendar months."

38.     As a result of the premature termination of the Franchise Agreement, Janki is obligated to pay SWI liquidated damages in the amount of $153,718.06, as calculated pursuant to section 12.1 of the Franchise Agreement.

39.     Notwithstanding SWI's demand for payment, Janki has failed to pay SWI the liquidated damages in the amount of $153,718.06 as required by section 12.1 of the Franchise Agreement.

40.     SWI has been damaged by Janki's failure to pay liquidated damages.

**THIRD COUNT**
**(Breach of Contract)**

41.     SWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 40 of the Complaint.

42.     By virtue of the premature termination of the Franchise Agreement, SWI sustained a loss of future revenue over the remainder of the term of the Franchise Agreement.

43.     If the Court determines that Janki is not liable to pay SWI liquidated damages as required by section 12.1 of the Franchise Agreement then, in the alternative, Janki is liable to SWI for actual damages for the premature termination of the Franchise Agreement.

44.     SWI has been damaged by Janki's breach of its obligation to operate a Super 8® guest lodging facility for the remaining term of the Franchise Agreement.

**FOURTH COUNT**
**(Breach of Contract)**

45.     SWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 44 of the Complaint.

46.     Pursuant to section 7 and Schedule C of the Franchise Agreement, Janki was obligated to remit Recurring Fees to SWI.

47.     Despite its obligation to do so, Janki failed to remit certain of the Recurring Fees due and owing under the Franchise Agreement in the current amount of $27,360.55.

48.     Janki's failure to remit the agreed Recurring Fees constitutes a breach of the Franchise Agreement and has damaged SWI.

**FIFTH COUNT**
**(Unjust Enrichment)**

49.     SWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 48 of the Complaint.

50.     At the time of the termination of the Franchise Agreement, Janki was obligated to pay SWI Recurring Fees.

51.     Despite its obligation to do so, Janki failed to pay certain of the Recurring Fees due and owing under the Franchise Agreement in the current amount of $27,360.55.

52.     Janki's failure to compensate SWI constitutes unjust enrichment and has damaged SWI.

### SIXTH COUNT
### (Breach of Contract)

53.     SWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 52 of the Complaint.

54.     Pursuant to the terms of the Guaranty, the Patel Defendants agreed, among other things, that upon a default under the Franchise Agreement, they would immediately make each payment and perform each obligation required of Janki under the Franchise Agreement.

55.     Despite their obligation to do so, the Patel Defendants have failed to make any payments or perform or cause Janki to perform each obligation required under the Franchise Agreement.

56.     Pursuant to the Guaranty, the Patel Defendants are liable to SWI for Janki's liquidated damages in the amount of $153,718.06, or actual damages in an amount to be determined at trial, and Janki's Recurring Fees due and owing under the Franchise Agreement.

**WHEREFORE**, SWI demands judgment:

A.      on the First Count ordering that Janki Hospitality, Inc. account to SWI for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility;

B.      on the Second Count against Janki Hospitality, Inc. for liquidated damages in the amount of $153,718.06, together with interest, attorneys' fees and costs;

C.    on the Third Count against Janki Hospitality, Inc. for actual damages in an amount to be determined at trial, together with interest, attorneys' fees, and costs;

D.    on the Fourth Count against Janki Hospitality, Inc. for Recurring Fees due and owing under the Franchise Agreement, in the current amount of $27,360.55, together with interest, attorneys' fees, and costs;

E.    on the Fifth Count against Janki Hospitality, Inc. for Recurring Fees due and owing under the Franchise Agreement, in the current amount of $27,360.55, together with interest, attorneys' fees, and costs;

F.    on the Sixth Count against the Patel Defendants for damages in the amount of all liquidated damages or actual damages and Recurring Fees due and owing under the Franchise Agreement, together with interest, attorneys' fees, and costs; and

G.    such other, further and different relief as to this Court seems just and proper.


Dated:  Buffalo, New York
          April 28, 2015

                                                   GOLDBERG SEGALLA LLP


                                                   s/ Joseph M. Hanna
                                                   Joseph M. Hanna  (IL Bar No. 6308424)
                                                   *Attorneys for Plaintiff*
                                                   665 Main Street, Suite 400
                                                   Buffalo, New York  14203
                                                   Telephone: 716-566-5400
                                                   jhanna@goldbergsegalla.com